IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| Plaintiff, | : |
| v. | : Criminal Action No. 07-22-JJF |
| STEVEN KELLAM, | : |
| Defendant. | : |

## DEFENDANT'S AMENDED MOTION TO SUPPRESS
## PHYSICAL EVIDENCE AND STATEMENTS

Defendant, Steven Kellam, by and through his undersigned counsel, Edson A. Bostic, hereby moves this Court, pursuant to Federal Rule of Criminal Procedure 12(b)(3) and the Fourth and Fifth Amendments of the United States Constitution, for an Order suppressing the Government's use of any and all evidence illegally seized by law enforcement officials on or about February 6, 2007, including any and all statements made subsequent to the illegal search.

In support of this motion, Mr. Kellam avers as follows:[1]

1. On February 5, 2007, federal investigators received information from a case informant that Mr. Kellam was preparing to make a trip to purchase cocaine. Based on this information, the investigators initiated surveillance of Mr. Kellam at the Delaware State Probation and Parole Office in Dover, Delaware.

---

[1] The facts contained in paragraphs 1-8 of this motion were taken from the arresting officer's Report of Investigation and discovery. Although Mr. Kellam cites these facts in his motion, he does not concede that the events transpired as stated by the arresting officer. Mr. Kellam submits that an evidentiary hearing is needed to further develop the facts, which are determinative of this motion.

2. Surveillance units followed Mr. Kellam, who was traveling in a black Mitsubishi, from Dover to Bridgeville, Delaware.[2] Mr. Kellam then traveled to the Georgetown Apartments in Georgetown, Delaware, where he picked up Antawn Crawford and later returned to his home.

3. Surveillance units subsequently followed Mr. Kellam, Mr. Crawford and the unidentified individual to the Dover Mall, where they picked up Terrence Johnson. Surveillance units followed the Mitsubishi as it traveled along Delaware Route 1, US-13, the Delaware Memorial Bridge, the New Jersey Turnpike and the George Washington Bridge.

4. Surveillance units observed the car enter the Bronx and park near 178th Street for approximately two hours. According to the investigators, this area was identified by the case informant as the location where Mr. Kellam would allegedly purchase cocaine. The discovery does not report any observations which indicate that a drug purchase occurred at this location.

5. Surveillance units followed the Mitsubishi back to a rest stop on the New Jersey Turnpike and observed three occupants exit the vehicle and enter the food court. Shortly thereafter, the vehicle continued on the New Jersey Turnpike and traveled at or slightly above the speed limit, and almost always used its turn signals when changing lanes. The car also made a second stop at a rest area before crossing the Delaware Memorial Bridge.

6. At some point in time, the investigators checked the DELJIS system and discovered that Mr. Kellam and Dwayne Coverdale, the vehicle's driver, were level three probationers, and that there was an outstanding warrant for Mr. Coverdale.

7. Based on the case informant's statements and surveillance activity, the Delaware River

---

[2] According to the discovery, a second individual was in the vehicle. This individual's identity, however, was redacted.

and Bay Authority stopped the Mitsubishi and arrested Mr. Kellam, Mr. Coverdale, Mr. Johnson and Mr. Crawford.

8. After arresting Mr. Kellam and two of the other occupants of the car, law enforcement officers drove the car away from the scene. The car was later searched and approximately 300 grams of a white, powdery substance was recovered from the vehicle's overhead light compartment. The substance field tested positive for the presence of cocaine.

9. After Mr. Kellam's arrest, Agent Tom Jacobs interrogated Mr. Kellam, as witnessed by Task Force Officers Ron Marzac and Torrie James. Agent Jacobs administered Mr. Kellam's Miranda rights, and he allegedly made several statements. According to the discovery, Mr. Kellam denied any knowledge of the seized drugs, and stated that the purpose for the New York trip was to "pick up [his] mink coat and watch." Mr. Kellam allegedly stated that Mr. Johnson wanted to go shopping in New York and purchased a pair of jeans during the trip. Mr. Kellam allegedly stated that he neither purchased drugs nor saw anyone else purchase drugs while in New York. Mr. Kellam also allegedly stated that, on the return trip home, the arrested individuals stopped twice at rest areas for bathroom breaks and cigarettes. Finally, Mr. Kellam allegedly offered to purchase drugs under the direction of the agents if they "could make these charges and his current state probation charges go away . . . ."

10. On February 15, 2007, Mr. Kellam was indicted for knowingly possessing cocaine with the intent to distribute it, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C).

11. The Fourth Amendment protects "the right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures." See U.S. CONST. Amend. IV. An investigatory stop requires that the police have reasonable suspicion based on articulable

facts that a crime has been committed. United States v. Coker, No. 05-4056, 2007 WL 931107 (3d Cir. Mar. 29, 2007).

12. The arrest of a suspect, however, requires that the police have probable cause to do so, which is a more stringent standard. Id. at *2. An arrest is lawful if, at the time, the police had probable cause. Beck v. Ohio, 379 U.S. 89, 91 (1964) (stating that probable cause for arrest depends "upon, whether at the moment arrest was made . . . the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the suspect had committed or was committing an offense.").

13. Where the "initial impetus for an arrest is an informer's tip, information gathered by the arresting officers can be used to sustain a finding of probable cause for an arrest that could not be adequately supported by the tip alone. But the additional information acquired by the arresting officers must in some sense be corroborative of the informer's tip that the arrestees committed the felony or . . . were in the process of committing the felony." Whiteley v. Warden, Wyo State Penitentiary, 401 U.S. 560 (1971); see also Taylor v. Alabama, 457 U.S. 687 (1982) (rejecting police reliance on an uncorroborated tip as basis for probable cause for arrest).

14. In this case, law enforcement officials lacked probable cause to arrest Mr. Kellam. As noted in the discovery, the "traffic stop," and Mr. Kellam's immediate arrest, were based on the case informant's information and the officers' surveillance. The officers, however, have offered no evidence to support their reliance on, or the trustworthiness of, the case informant's information. Moreover, the officers' surveillance did not indicate that any illegal activity occurred to sufficiently corroborate the case informant's tip. The officers, therefore, "effectuated an investigatory arrest without probable cause, based on uncorroborated informant's tip," and Mr. Kellam's illegal arrest

warrants the suppression of the physical evidence under the fruit of the poisonous tree doctrine, as expressed in Wong Sun v. United States, 371 U.S. 471 (1963) and its progeny.

15. Law enforcement officials also stated that they performed a "traffic stop" of the vehicle because the car had heavily tinted windows, and because Mr. Coverdale, the driver of the vehicle, had an outstanding warrant. Mr. Kellam contends that this "traffic stop" was, in essence, an investigatory arrest that lacked probable cause.

16. If the arrestee is an occupant of an automobile at the time of arrest, the arresting officer may make a search of the passenger compartment of the automobile, including any containers therein. New York v. Belton, 453 U.S. 454 (1981). The passenger compartment has been interpreted to mean those areas reachable without exiting the vehicle and without dismantling door panels or other parts of the car. United States v. Boston, No.Civ.A.SA04CR0459XR, 2005 WL 354037, at *4 (W.D. Tex. Jan. 25, 2005).

17. Here, the officers searched inside of the vehicle's overhead light and discovered 300 grams of a white-powdery substance that field tested positive for the presence of cocaine. This search exceeded the scope of the passenger compartment because it involved dismantling a part of the vehicle to locate evidence. The physical evidence that was obtained as the result of this illegal search and seizure should be suppressed pursuant to Wong Sun.

18. Mr. Kellam also submits that any alleged statements made during, or subsequent to, his illegal search and seizure should be suppressed pursuant to the Fifth Amendment and Miranda v. Washington, 384 U.S. 436, 444 (1966) (stating that a suspect subjected to custodial interrogation must be advised of his rights prior to making a statement); see also Wong Sun v. United States, 371

U.S. 471 (1963) (stating that evidence from an illegal search must be suppressed in accordance with the "fruit of the poisonous tree doctrine").

19. Mr. Kellam reserves the right to file a Memorandum of Law in support of his Motion to Suppress Physical Evidence[3] after the completion of a hearing in this matter.

---

[3] Mr. Kellam is uncertain whether the Government has amassed and produced all the discovery materials in this matter. As such, Mr. Kellam reserves the right to supplement the instant motion and/or file other appropriate motions, if additional discovery is received.

**WHEREFORE**, Mr. Kellam respectfully submits that this Court conduct a hearing to further develop the facts related to this motion and enter an Order suppressing the Government's use of any and all physical evidence illegally seized by law enforcement officials on or about February 6, 2007, including any alleged statements made by Mr. Kellam on or about said date.

Respectfully Submitted,

EDSON A. BOSTIC
Federal Public Defender

TIEFFA N. HARPER
Research & Writing Attorney

Attorneys for Steven Kellam

FEDERAL PUBLIC DEFENDER
FOR THE DISTRICT OF DELAWARE
ONE CUSTOMS HOUSE
704 KING STREET, SUITE 110
WILMINGTON, DE  19801
(302) 573-6010

Dated: April 27, 2007

## CERTIFICATE OF SERVICE

The undersigned attorney for Defendant Steven Kellam hereby certifies that on April 27, 2007 two (2) copies of Defendant's Amended Motion to Suppress Physical Evidence and Statements were placed in a box in the United States District Court of the District of Delaware addressed to the following person:

Edmond Falgowoski, Esq.
Assistant United States Attorney
1007 Orange Street, Suite 700
Wilmington, DE  19801

Respectfully Submitted,

EDSON A. BOSTIC
Federal Public Defender

TIEFFA N. HARPER
Research & Writing Attorney

Attorneys for Steven Kellam

FEDERAL PUBLIC DEFENDER
FOR THE DISTRICT OF DELAWARE
ONE CUSTOMS HOUSE
704 KING STREET, SUITE 110
WILMINGTON, DE  19801
(302) 573-6010

Dated: April 27, 2007