IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Criminal Action No. 07-22-JJF |
| | ) | |
| STEVEN KELLAM, | ) | |
| | ) | |
| Defendant. | ) | |

UNSEALED 11/5/08 KJK
SEALED

## GOVERNMENT RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS PHYSICAL EVIDENCE AND STATEMENTS

**NOW COMES** the United States of America, by and through its undersigned attorneys, and hereby responds to Defendant's Motion to Suppress Physical Evidence and Statements, and respectfully requests that, following an evidentiary hearing, this Court deny the defendant's Motion.

**I.   Introduction**

On February 15, 2007, the federal grand jury for the District of Delaware returned a one count Indictment, charging the defendant, Steven Kellam with possession of cocaine with intent to distribute it, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C). On April 27, 2007, the defendant filed a Motion to Suppress Physical Evidence and Statements, and an evidentiary hearing on this Motion has been scheduled before this Court on July 11, 2007.

**II.   Factual Background**

The government expects that the evidence at the suppression hearing will show the following facts:

1.   On February 5, 2007, agents from the Drug Enforcement Administration (DEA) and the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) received information from a

confidential informant (CI) that the defendant planned a car trip to Atlanta to purchase cocaine and that the CI planned to go along. Surveillance was established by DEA and ATF agents of a black Mitsubishi driven by the CI with the defendant in the front passenger seat. The Mitsubishi was observed stopping at various locations in Delaware during which time two other individuals were separately picked up. At some point, the CI contacted agents and informed them that the trip to Atlanta was cancelled. Officers, however, maintained surveillance of the vehicle, which drove to New York City and then back to Delaware later that evening.[1] During the trip, the CI attempted to call officers, however, was unable to make contact with them during the trip.

2.  During the course of surveillance, agents observed the vehicle commit numerous traffic violations, including travel above the posted speed limit, erratic driving, and noted that the vehicle had darkly tinted windows in apparent violation of Delaware Code.

3.  A computer database check revealed that the CI was wanted on two outstanding bench warrants on unrelated charges. Agents, moreover, were already aware that neither the CI nor the defendant had a valid driver's license. Agents further knew that both the CI and the defendant were on Level III Delaware state probation and received confirmation that evening from Delaware probation that neither had permission to go to New York. Agents were given oral authorization by a member of the Delaware probation office to detain both individuals for probation violations upon their re-entry into the state of Delaware.

4.  Just before midnight, the black Mitsubishi was followed across the Delaware state line via the Delaware Memorial Bridge. Officers from the Delaware River Bay Authority (DRBA),

---

[1] Agents had previously received information from the CI that the defendant had sources of supply for cocaine in Atlanta, Georgia and New York City.

in conjunction with DEA and ATF agents, conducted a traffic stop of the vehicle after it crossed into Delaware. Because of the dark window tinting, officers were unable to tell who was driving the vehicle at the time of the stop. Each occupant of the car was ordered individually to exit the car. The CI was the driver of the vehicle and the defendant was the front seat passenger. The other two individuals were seated in the back of the car.

5. The CI was ordered to exit the car first and was brought behind a DRBA police cruiser where he made contact with DEA and ATF agents. The CI immediately informed agents that there was cocaine hidden above the dome light in the passenger compartment of the car. The CI was placed under arrest for his outstanding warrants, and was issued a ticket by DRBA for driving with a suspended license and for operating a vehicle with overly dark window tinting.

6. The defendant was meanwhile brought to the back of a different police cruiser, handcuffed, and patted down for weapons. Each of the occupants of the vehicle was shortly thereafter taken in police cruisers to the DRBA station, a few hundred yards away. The Mitsubishi was driven into the DRBA garage, where a K-9 unit was already on hand. A canine was allowed inside the car, and immediately alerted to the area near the dome light. The dome light cover was then removed by agents, where they discovered approximately a quarter kilogram of cocaine. Approximately 15 minutes elapsed from the time that the initial traffic stop was made until the time that the cocaine was discovered.

7. The black Mitsubishi was not registered to or owned by any of the vehicle's occupants, but rather was in the name of Letoya Jackson.

8. The defendant was placed under arrest and was advised of his *Miranda* rights. After confirming that he understood his rights, the defendant agreed to speak with DEA agents, and stated

that he went to New York to pick up his mink coat and watch, and that Terrence Johnson, another occupant of the car, wanted to go shopping and had purchased a pair of blue jeans in Manhattan. The defendant also offered to make a controlled purchase of drugs if agents could promise not to press charges, and specified that he could buy drugs from sources in Atlanta, Georgia, and New York. The defendant, however, denied possession or knowledge of the drugs discovered in the car that evening.

### III.  Legal Argument

The defendant contends that the police lacked probable cause to conduct the traffic stop of the defendant's vehicle. The defendant also asks this Court to suppress statements made by the defendant following his arrest. For the reasons that follow, these arguments are without merit, and this Court should deny the defendant's Motion following the evidentiary hearing.

#### A.  *There Was Reasonable Suspicion to Stop the Vehicle.*

9.  Law enforcement officers need only reasonable suspicion to justify a traffic stop of a vehicle. *See United States v. Delfin-Colina*, 464 F.3d 392, 397-98 (3d Cir. 2006) (holding that "the *Terry* reasonable suspicion standard applies to routine traffic stops" such that "a traffic stop will be deemed a reasonable 'seizure' when an objective review of the facts shows that an officer possessed specific, articulable facts that an individual was violating a traffic law at the time of the stop"). In this case, the officers had at least reasonable suspicion to make the initial stop of the vehicle for four reasons:

10.  First, the officers had reasonable suspicion that the defendant and the CI were occupants of the car and that both were on Level III probation in the State of Delaware. The vehicle was stopped upon its re-entry into Delaware, after having traveled from Delaware to New York and

4

back. Prior to the traffic stop, officers had confirmed that neither the defendant nor the CI had permission to leave Delaware, and the officers had received oral authorization to detain these individuals from a member of the Delaware Probation office. *See* 11 Del. C. § 1904 ("[A]n arrest by a peace officer without a warrant for violation of probation is lawful whenever the peace officer has a reasonable ground to believe that the person to be arrested has committed a new offense within or without the State during a period of probation and has thereby violated a condition of said probation imposed upon the person by a court of this State."). The stop of the vehicle was made by DRBA officers, in conjunction with agents from DEA and ATF. DRBA officers are considered peace officers authorized to make arrests for violations of probation under Delaware law. *See* 11 Del. C. § 1901 ("'Peace officer' is any public officer authorized by law to make arrests in a criminal case."). The DRBA officers were permitted to make a *Terry* stop of the vehicle and to arrest the defendant on that basis.

11. Second, the officers had reasonable suspicion that the CI was an occupant of the car and had confirmed that he had active, outstanding warrants for his arrest at the time of the vehicle was pulled over. *See United States v. Hensley*, 469 U.S. 221, 229 (1985) (holding that *Terry* stop permitted based on reasonable suspicion that individual is wanted on outstanding warrant); *see also United States v. Fields*, 176 Fed. Appx. 327, 330 (3d Cir. 2006) (Not Precedential Opinion) (finding reasonable suspicion to stop vehicle where occupant had active bench warrant).

12. Third, the officers knew that neither the CI nor the defendant had a valid driver's license. Surveillance officers had previously observed the CI driving the car, and had reasonable suspicion that he was driving at the time of the traffic stop. The traffic stop was validly based on reasonable suspicion that driver was operating the vehicle with an invalid or suspended license.

13. Finally, the traffic stop was justified based on several traffic violations observed by the surveillance officers including travel at an excessive rate of speed and violation of the Delaware window tinting standards, set forth in 21 Del. C. § 4313. *See Hall v. State*, 1998 WL 281206, at *6 (Del. Super. 1998) (finding probable cause for traffic stop based on suspected window tint violations).

14. Once the vehicle was legitimately stopped, the officers were permitted to order the occupants to get out of the vehicle without any further particularized suspicion. *See Maryland v. Wilson*, 519 U.S. 408, 415 (1997); *United States v. Bonner*, 363 F.3d 213, 216 (3d Cir. 2004) (citing *Pennsylvania v. Mimms*, 434 U.S. 106, 110-11 (1977)).

15. Moreover, the manner in which the stop was conducted and the occupants ordered out of the car was reasonable given the observations and information suggesting that the occupants of the car had gone to New York to purchase drugs, the fact that there were four individuals in the car, two of whom were in violation of probation, and the criminal history of the CI and the defendant which involved prior convictions for drug trafficking, gun violations, and crimes of violence. *See Maryland v. Wilson*, 519 U.S. 408, 414 (1997) (noting that "danger to an officer from a traffic stop is likely to be greater when there are passengers in addition to the driver in the stopped car"); *United States v. Edwards*, 53 F.3d 616, 619 (3d Cir. 1995) (holding that it was a reasonable *Terry* procedure to block the defendant's car with their cruisers and approaching with guns drawn in responding to an anonymous tip concerning drug activity); *See Baker v. Monroe Township*, 50 F.3d 1186, 1193 (3d Cir. 1995) ("There is no per se rule that pointing guns at people, or handcuffing them, constitutes an arrest.").

16.  Even though the stop had not necessarily ripened into a custodial arrest at this point, given that the defendant had been in clear violation of his probation for leaving the state without permission, the DRBA officers had probable cause to place him under arrest at that time.

17.  Moreover, after the CI informed officers that there were drugs in the dome light of the car, the officers had a reasonable basis to move the vehicle to the nearby station garage, and to detain the occupants of the car for the additional 10 to 15 minutes required to search the car.[2] *See United States v. McGlory*, 968 F.2d 309, 343 (3d Cir. 1992); *see also United States v. Martin*, 422 F.3d 597, 602 (7th Cir. 2005) ("[I]nformation lawfully obtained during that period may provide the officer with reasonable suspicion of criminal conduct that will justify prolonging the stop to permit a reasonable investigation.").

---

[2]After the defendant exited the car, he was placed in handcuffs, put into the police cruiser and taken a few hundred yards to the DRBA station. Moving the car and its occupants from the side of the bridge was justified because (1) the officers had reasonable belief that the defendant and the CI had committed probation violations and were thus authorized to detain each of them under Delaware law; (2) officers had received the specific information from the CI that there was cocaine in the vehicle; (3) neither the CI nor the defendant had a valid license, and thus the vehicle could not be released; and (4) it was necessary to move the car in order to clear the bridge and to permit normal traffic to resume. *See Florida v. Royer*, 460 U.S. 491, 504-05 (1983) ("[T]here are undoubtedly reasons of safety and security that would justify moving a suspect from one location to another during an investigatory detention"); *see also United States v. Gori*, 230 F.3d 44, 56 (2d Cir. 2000) ("[I]t is well established that officers may ask (or force) a suspect to move as part of a lawful *Terry* stop."); *Halvorsen v. Baird*, 146 F.3d 680, 684-85 (9th Cir. 1998) (permitting officers to handcuff suspect and drive him to a nearby gas station for questioning as part of a *Terry* investigation); *United States v. Kapperman*, 764 F.2d 786, 792 (11th Cir. 1985) ("To conduct the search at the site of the initial stop would have unduly impeded the traffic moving along the busy street. Thus police acted reasonably in moving to a nearby area.").

### B.     *The Defendant Lacks Standing to Challenge the Search of the Vehicle.*

18.     Because he was a mere passenger in the vehicle, which was registered to and owned by a third party, the defendant's has standing only to seek suppression of the fruits of an illegal *seizure* if the initial traffic stop was invalid. *See Brendlin v. California*, 127 S.Ct. 2400 (2007).

19.     Where, as here, the initial stop was supported by reasonable suspicion, "a passenger in a car that he neither owns nor leases typically has **no standing to challenge the search of the car.**"[3] *United States v. Mosley*, 454 F.3d 249, 253 (3d Cir. 2006) (emphasis added) (citing *Rakas v. Illinois*, 439 U.S. 128 (1978)). In *Rakas*, the Supreme Court held that vehicle passengers, who neither owned or leased the vehicle, lacked standing to challenge a search of the vehicle's glove compartment area under the seat, even though the passengers were in the car with the permission of the owner. 439 U.S. at 148. The Third Circuit has thus observed that "Fourth Amendment rights are personal rights, and a search of a car does not implicate the rights of non-owner passengers: the car is treated conceptually like a large piece of clothing worn by the driver." *Mosley*, 454 F.3d at 253.

20.     In this case, the vehicle was registered to a third party and was neither owned nor leased by the defendant, who was merely a passenger in the car. As a result, under *Rakas*, the defendant lacks standing to challenge the search of the passenger compartment which occurred after a legitimate traffic stop.

---

[3]In *Brendlin*, the Supreme Court took care to note that the defendant "claimed only that the traffic stop was an unlawful seizure of his person," and "did not assert that his Fourth Amendment rights were violated by the search" of the vehicle. 127 S.Ct. at 2404 (citing *Rakas*, 439 U.S. 128).

### C. At Any Rate, The Search of the Passenger Compartment Was Valid as a Search Incident to Arrest.

21. Once the car was stopped and the occupants exited the vehicle, the CI was immediately placed under arrest on his outstanding warrants. Following a lawful custodial arrest of an occupant of an automobile, police may search the passenger compartment of that automobile incident to arrest. *New York v. Belton*, 453 U.S. 454, 460 (1981). Any containers found within the passenger compartment may also be searched by police, including the hidden compartment above the dome light. *See id.* at 461 n.4 (noting that "containers" include "closed or open glove compartments, consoles, or other receptacles located anywhere within the passenger compartment, as well as luggage, boxes, bags, clothing, and the like"). The police may conduct a search incident to arrest even if the occupants had already been placed into custody. *See Thornton v. United States*, 541 U.S. 615, 624 (2004) (upholding search incident to arrest where petitioner had already been arrested, handcuffed, and placed in the back of the patrol car prior to the search).

### D. Moreover, the Search of the Dome Light Was Supported by Probable Cause.

22. As soon as he made contact with police, the CI informed them that there was cocaine secreted in the dome light of the vehicle. It was at that point that the vehicle was driven to the nearby DRBA station and subjected to a canine scan. The canine alerted to the area near the dome light. When agents took off the dome light cover, they discovered approximately a quarter kilogram of cocaine.

23. The CI's report, combined with the circumstances of the trip, and the canine alert were sufficient to establish probable cause to search the dome light area. *See United States v. Massac*, 867 F.2d 174, 176 (3d Cir. 1989) ("When the alert was given by the dog, we are satisfied

that, at least when combined with the other known circumstances [an anonymous tip and suspicious purchases of railroad tickets], probable cause existed to arrest.").

### E. The Defendant Knowingly and Voluntarily Waived His Miranda Rights.

24. The Government acknowledges that the defendant was in custody for purposes of *Miranda v. Arizona*, 384 U.S. 436 (1966), at the time he made the challenged statements. The defendant, however, was promptly informed of his *Miranda* rights, and informed the officers that he understood them. The defendant then voluntarily agreed to make a statement to the agents. His statement is therefore admissible.

**WHEREFORE,** the United States requests that the Court deny, following the evidentiary hearing, the defendant's Motion to Suppress Physical Evidence and Statements.

Respectfully submitted,

COLM F. CONNOLLY
UNITED STATES ATTORNEY

BY: /s/ Ilana H. Eisenstein
Ilana H. Eisenstein
Assistant United States Attorney

Dated: July 6, 2007

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>      Plaintiff,<br><br>v.<br><br>STEVEN KELLAM,<br><br>      Defendant. | :<br>:<br>:<br>:   Criminal Action No. 07-22-JJF<br>:<br>:<br>:<br>: |

## AFFIDAVIT OF SERVICE

I, Kathie Gray, an employee in the Office of the United States Attorney for the District of Delaware, hereby attest under penalty of perjury that on July 6, 2007, two copies of the **GOVERNMENT RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS PHYSICAL EVIDENCE AND STATEMENTS** were served, as indicated, upon:

Edson A. Bostic, Esquire
Federal Public Defender's Office
First Federal Plaza, Suite 110
704 King Street
Wilmington, DE 19801
via U.S. Mail

/s/ Kathie Gray
_____
Kathie Gray